UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARKETPLACE LAGUARDIA LIMITED　　　　　NOT FOR PUBLICATION
PARTNERSHIP,　　　　　　　　　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　Plaintiff,

　　-against-　　　　　　　　　　　　　　　　07-CV-1003 (CBA)

HARKEY ENTERPRISES, INC., and
HARKEY ENTERPRISES OF NEW YORK, L.L.C.,

　　　　　　　　　Defendants.
------------------------------------------------------------X
AMON, United States District Judge:

　　　　Plaintiff Marketplace LaGuardia Limited Partnership ("Marketplace") filed this diversity action on March 8, 2007, seeking damages resulting from the breach of a lease agreement between Marketplace and defendant Hankey Enterprises, Inc. ("HEI").[1] Defendant Hankey Enterprises of New York LLC ("Harkey") brings this motion to dismiss all causes of action against it pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Harkey's motion is granted in part and denied in part.

I.　　**The Allegations in the Complaint**

　　　　Marketplace, at all relevant times, had a lease agreement with the Port Authority of New York and New Jersey for the retail area of the Central Terminal Building at LaGuardia Airport. (¶ 18.)[2] On or about May 18, 2000, Marketplace entered into a written agreement with HEI (the

---

　　　　[1]Defendant Hankey Enterprises Inc. has defaulted in this action and therefore has not joined in this motion to dismiss the complaint.

　　　　[2]Citations in the format (¶ __) are references to the Complaint, filed by Marketplace on March 8, 2007.

1

"Sublease") for the rental of four separate locations at the retail area of the Central Terminal. (¶ 19.) This action is primarily one for breach of contract by HEI for failure to pay rent under the Sublease. (¶¶ 28-45.) However, in addition to the two claims asserted against HEI, Marketplace brings four claims against Harkey, for (1) alter ego liability for HEI's breach of the Sublease (¶¶ 46-66); (2) unjust enrichment and restitution (¶¶ 67-76); (3) prima facie tort (¶¶ 77-87); and (4) tortious interference with a contract. (¶¶ 88-105.)

After acquiring the rights to the premises in question pursuant to the Sublease, HEI entered into agreements with Harkey whereby Harkey was to operate four "Pretzel Time" stores at the locations leased by HEI.[3] (¶¶ 20-26, 48-53.) Pursuant to the arrangement between HEI and Harkey, Harkey was to indemnify HEI for the lease payments owed to Marketplace. (¶ 54.) The gravamen of Marketplace's claims against Harkey is that Harkey exercised total control over HEI (¶¶ 23-26, 47-49, 49-54, 55-56, 61-63, 69, 71, 81, 90, 96) and used that control to cause HEI to become insolvent (¶ 55-56, 96), knowing that this would result in the failure of rent payments to be made to Marketplace under the terms of the Sublease. (¶ 27, 57-58, 81-83, 93-96, 103.) Marketplace alleges that this was done by Harkey in an effort to exert pressure on Marketplace in order to extend the Sublease between Marketplace and HEI (¶ 59, 85, 92), presumably so that Harkey could continue to successfully run its Pretzel Time stores.

II. **Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint requires only "a short and plain statement of the claim showing that the

---

[3]Harkey had separately entered into four franchise agreements with Pretzel Time, Inc. for retail operations at the premises covered by the Sublease. (¶ 21.)

pleader is entitled to relief." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" Id. (citing Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007)). In analyzing a complaint pursuant to a motion to dismiss, the Court must draw all reasonable inference in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

The Second Circuit has observed that the precise meaning of the standard articulated by the Supreme Court in Twombly remains somewhat uncertain but notes that, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Commc'ns., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Twombly, 127 S.Ct. at 1965).

III. **Discussion**

    A.    Alter Ego

Marketplace's first claim against Harkey is one wherein it seeks to pierce the corporate veil and hold Harkey liable for HEI's alleged breach of the Sublease. In order to state a claim for alter ego liability, Marketplace must have alleged that Harkey exercised "completed domination" with respect to the transaction attacked such that HEI "had no separate will of its own," and that this domination was used to commit a "fraud or wrong" against Marketplace. Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988); see also Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 899 (S.D.N.Y. 1999) ("In order to state a claim under an alter ego theory of liability, [a plaintiff] must establish: (1) that [the defendant] exercised such

3

complete control that [the dominated corporation] had no separate will of [its] own; and (2) that this domination was used to commit a wrong against [the plaintiff] which proximately caused [its] injuries."); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992)).

    1.  Control

 Harkey's primary argument with respect to the "complete control" prong is that complete control cannot be established as a matter of law becuase Harkey had no ownership interest in HEI. (Defendant's Motion to Dismiss ("Mot.") at 7.) This argument is not well-founded. As the courts within this circuit have observed: "New York courts have recognized for veil piercing purposes the doctrine of equitable ownership, under which an individual who exercises sufficient control over a corporation may be deemed an 'equitable owner,' notwithstanding the fact that the individual is not a shareholder of the corporation." Shamis, 34 F. Supp. 2d at 900 (citing Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1051 (2d Cir. 1997)); see also Guilder v. Corinth Constr. Corp., 235 A.D.2d 619, 651 (3rd Dept. 1997) ("Although the record does not establish that the [defendants] were indeed shareholders of Corinth, that does not preclude the relief the plaintiff seeks. Even if the [defendants] were not the Corinth's legal owners, it is apparent that they dominated and controlled the corporation to such an extent that they may be considered its equitable owners."). Therefore, the mere fact that Harkey does not have an ownership interest in HEI does not preclude Marketplace's claim for alter ego liability.[4]

---

[4] In fact, Marketplace has alleged that HEI is a member of Harkey, which is a limited liability company organized under Virginia law. While it seems odd to suggest that Harkey could have exercised complete control over an entity that has an ownership interest in it, Harkey does not argue that this precludes Marketplace's claim. Nor is the Court aware of any legal authority that would suggest that result. To the contrary, New York courts recognize "reverse piercing," where a corporation can be held liable for the actions of its shareholders. See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997).

Harkey further argues that "[e]ven assuming *arguendo* that [Marketplace] could overcome the fatal deficiency of [Harkey's] lack of an ownership interest in [HEI], an examination of the type of facts considered by the Second Circuit in deciding whether to pierce the corporate veil demonstrates that the Complaint is devoid of any facts that would otherwise warrant such a finding." (Mot. at 7.) The Court disagrees. The Second Circuit has set forth ten non-exhaustive factors to be considered when determining if a party has exercised total domination and control:

> (1) the absence of formalities and paraphernalia that are part and parcel of corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

William Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991). The domination required need not be complete with respect to every aspect of the corporation's business, rather, it need only be complete with respect to the transaction attacked. See Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997); Gorrill v. Icelandair/Flugleider, 761 F.2d 847, 853 (2d Cir. 1985).

In this case, Marketplace has sufficiently alleged complete control by Harkey over HEI for the purposes of the transaction at issue; namely, the Sublease and its alleged breach. Harkey and HEI entered into a series of agreements. (¶ 24-25.) Under those agreements, Harkey was to effectively make the payments owed by HEI to Marketplace under the Sublease. (¶26.)

5

Pursuant to this arrangement, it appears that Marketplace has alleged that while HEI originally obtained only the rights to the premises and Harkey originally obtained only the rights to operate Pretzel Time Stores, they licensed each other to the rights they had independently secured, and Harkey occupied the premises and operated the four Pretzel Time stores while HEI did neither. (¶¶ 49-54, 61.) Harkey was the entity collecting the gross revenue from the Pretzel Time stores and paying the debts of HEI as they became due. (¶ 90.) Moreover, while HEI was the entity liable for rent payments under the Sublease, when payments were made, they tended to come directly from Harkey. (¶ 69.) Additionally, Marketplace alleges that Harkey caused HEI to become insolvent and therefore unable to pay the rent owed under the Sublease, and that Harkey had control of the assets of HEI. (¶¶ 55-56, 81, 96.) Accordingly, Marketplace adequately alleges that Harkey exercised total control over HEI. (¶¶62-63, 71.)

Harkey argues that Marketplace has not adequately alleged complete control because the complaint states that Harkey and HEI were "directly at odds ... over the very payments at issue in this action." (Mot. at 8.) Harkey relies on paragraphs 57 and 58 of the Complaint, which allege as follows:

> 57. Upon information and belief, [Harkey] did intentionally withhold rent payments due under the Sublease which [HEI] directed [Harkey] to pay to [Marketplace].
> 58. Upon information and belief, [Harkey] did inform [HEI] that it would not make the payments to [Marketplace] as required by the Sublease.

As a preliminary matter, the Court is not convinced that these allegations, if true, necessarily counsel against a finding of complete control. Merely because HEI was being controlled against its will or wishes does not necessarily mean that it was not being controlled. In fact, one might conclude that HEI's complete inability to enforce the obligation of Harkey to

6

pay HEI's debts as they became due is evidence that HEI was unable to exercise business discretion independent from the controlling entity–the sixth Passalacqua factor recited above.

Moreover, Harkey has cited no authority for the proposition that a disagreement between the controlled and controlling corporation by itself precludes a finding of complete control. Indeed, the absence of any such disagreement or conflict between the controlling and controlled corporations is not even identified as one of the ten Passalacqua factors. See JSC Foreign Econ. Assoc., 386 F. Supp. 2d at 472 (rejecting an argument that the controlled corporation engaged in separate legitimate business and therefore could not be an alter ego because "the absence of legitimate business is not even one of the ten factors listed in Passalacqua for courts to consider when making [alter ego] determination[s]"). Moreover, there is no rule regarding how many of these factors must be present in any given case. See William Wrigley Jr. Co. v. Waters., 890 F.2d 594, 600-01 (2d Cir. 1989); Mirimax Film Corp. v. Abraham, No. 01 CV 5202, 2003 WL 22832384, at *8 (S.D.N.Y. Nov. 25, 2003) (The Passalacqua factors "are not exhaustive, nor is proof of any one factor or combination of factors necessarily determinative."). Rather than applying any rigid rule, "the general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result." Waters, 890 F.2d at 601 (citing Brunswick Corp. v. Waxman, 599 F.2d 34, 35 (2d Cir. 1979)); JSC Foreign Econ. Assoc. Technostroyexport v. Int'l Dev. and Trade Servs., Inc., 386 F. Supp. 2d 461, 464 (S.D.N.Y. 2005) ("There is no definitive rule that governs when courts will pierce the corporate veil because the decision 'in a given instance will necessarily depend on the attendant facts and equities.'" (quoting Morris v. N.Y. State Dep't of Taxation and Fin., 82 N.Y.2d 135, 141 (1993))). Therefore, the Court holds, on the basis of the allegations taken as a whole, that

7

Marketplace has adequately alleged complete control for the purposes of its alter ego claim.

        2.        Fraud or Wrong

In addition to showing domination and control, Marketplace must also establish that Harkey, through its domination, "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." Morris, 82 N.Y.2d at 141-42; see also Sahu v. Union Carbide Corp., No. 04 Civ. 8825, 2006 WL 3377577, at *6 (S.D.N.Y. Nov. 20, 2006) (This second prong "encompasses the overall goal of the veil-piercing doctrine, which is to prevent fraud or achieve equity. To satisfy this prong, the party seeking to veil pierce must establish that the parent corporation misused the corporate form for its own ends to commit a fraud or avoid its obligations.").

Harkey first argues that Marketplace has failed to properly allege this "fraud or wrong" prong because the requirements of Federal Rule of Civil Procedure 9(b) apply and Marketplace has not pleaded with the requisite particularity. (Mot. at 10.) It is true that where alter ego liability is premised on allegations of fraud, the fraud must be pleaded with particularity. Where the claim is not premised on fraud, however, Fed. R. Civ. P. 9(b) does not apply.[5] See In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003) ("[T]he more well-reasoned rule is that where the veil-piercing claims are not based on allegations of fraud, the liberal 'notice pleading' standard of Rule 8(a) applies."). Because, as will be made clear below, Marketplace's alter ego allegations do not allege any fraud, but rather a non-fraudulent wrong, those allegations do not face the more stringent requirements of Rule 9(b).

---

[5]This dual standard is possible because under the controlling New York law, veil piercing can be established by proof or fraud or some other non-fraudulent wrong. See In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003); United Feature Syndicate, Inc. v. Miller Feature Syndicate, Inc., 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002).

8

In this case, Marketplace has sufficiently alleged that Harkey's alter ego status was used to perpetrate a wrong. A classic example of a "fraud or wrong" in satisfaction of this prong of the alter ego analysis is the stripping of the assets of the dominated corporation for the purposes of rendering it judgment proof. See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 135 (2d Cir. 1997) (citing Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc., 758 F. Supp. 908, 917 (S.D.N.Y. 1991)); Sahu, 2006 WL 3377577, at *8("A classic example of conduct in satisfaction of the fraud prong is the stripping of assets of the subsidiary corporation by the parent to render the subsidiary judgment-proof."). Here, Marketplace has alleged that Harkey caused HEI to become insolvent and made it unable to pay rent owed under the Sublease (¶¶ 55-56), that Harkey seized control over the assets of HEI (¶ 81), and that Harkey intentionally withheld finances from both HEI and Marketplace in order to prevent those payments from being made. (¶¶ 57-58, 82, 94, 103.) Moreover, it is alleged that Harkey stated that it would pay all of the rent in arrears if the Sublease were extended. (¶ 59.) Additionally, in this action HEI has defaulted and is apparently judgment proof.

"[C]ourts have found liability on a veil-piercing theory when parent companies have caused their subsidiaries to breach contracts when it was in the interest of the parent." Carte Blanche PTE., Ltd., 758 F. Supp. at 917-18. In this case, Marketplace specifically alleges that the actions of Harkey caused HEI to breach the sublease. (¶ 58, 82, 95.) Allegations that Harkey prevented Marketplace from collecting rent payments from HEI and caused HEI to breach the Sublease constitute sufficient allegations of "fraud or wrong" pursuant to the second prong of the alter ego veil-piercing analysis. Accordingly, this claim survives Harkey's Motion to Dismiss.

B.      Unjust Enrichment

Marketplace's second claim against Harkey is a claim for unjust enrichment. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir. 1983)); see also Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 304 (S.D.N.Y. 2006). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" Kaye, 202 F.3d at 616 (quoting City of Syracuse v. R.A.C. Holding, Inc., 685 N.Y.2d 381, 381 (4th Dep't 1999)). Where the defendant receives a benefit, but not at the plaintiff's expense, an unjust enrichment claim fails. See Giant Supply Corp. v. City of New York, 248 A.D.2d 231, 235 (1st Dep't 1998). Here, Marketplace has not alleged that Harkey benefitted at Marketplace's expense.[6]

Harkey alleges that Marketplace leased the four premises in question to HEI, granting HEI the right to occupy and use them during the pendency of the lease. (¶¶ 19, 28-38.) The complaint further states that HEI and Harkey entered into an agreement whereby Harkey would be granted HEI's right to use the premises to operate its Pretzel Time stores. (¶¶ 25.) Thus, Harkey's benefit was conferred on it by HEI, who had the right to use and operate the premises during the time in question, and not Marketplace, who had already divested itself of this right

---

[6]Harkey also argues that Marketplace's unjust enrichment claim fails as a matter of law due to existence of a valid and enforceable contract governing the same subject matter as the claim; namely, the sublease between Marketplace and HEI. Although I need not reach the issue here, and I acknowledge the existence of contrary authority, I find persuasive Judge Mukasey's conclusion in Selden Associates, Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 40-41 (S.D.N.Y. 1991), that the existence of a valid and enforceable contract does not necessarily preclude an unjust enrichment claim between a party to the contract and a third party.

10

and thus could not grant it to another.[7]  Cf U.S. East Telecomms., Inc. v. U.S. West Commc'ns
Servs., 38 F.3d 1289, 1296-98 (2d Cir. 1994) (Generally, no unjust enrichment claim under New
York law for a subcontractor against a landowner because the subcontractor acts primarily to
benefit the general contractor and not the landowner).  Because Marketplace has failed to allege
an element of its prima facie case, its unjust enrichment claims is dismissed.[8]

> C.      The Tort Claims

Marketplace's third and fourth claims against Harkey are for prima facie tort and tortious
interference with a contract, respectively.  Harkey argues that both claims must fail because "[a]t
bottom, this action is one for non-payment of rent under a lease," and because normally the
"breach of a contractual obligation will not be sufficient in and of itself to impose tort liability to
non-contracting third parties upon the promisor." Church v. Callanan Indus., Inc., 99 N.Y.2d
104, 110-11 (2002); see also Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138-40
(2002).  Harkey's argument is misplaced.  The principle it cites serves to limit the scope of the
duty of care in an action in which duty is an element of the claim. See Church, 99 N.Y.2d at
110-11; Espinal, 98 N.Y.2d at 138.  Marketplace's two tort claims are for intentional torts, thus,

---

[7]The result is not altered by virtue of the fact that Harkey and HEI are corporate relatives.
See Int'l Customs Assoc., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1258 (S.D.N.Y. 1995)
(unjust enrichment claim dismissed where plaintiff provided services to a subsidiary of the
defendant, but not the defendant directly).

[8]At oral argument, Marketplace stated that if the Court were to grant Harkey's motion, it
would request that it be granted leave to amend its Complaint.  However, Marketplace also made
clear that it would only seek to amend certain allegations that bear on its alter ego claim.  In any
event, even had Marketplace stated an intent to amend the allegations regarding unjust
enrichment, the Court is of the opinion that Marketplace could not now allege that it had the
ability to confer the right to use the premises on Harkey consistent with Fed. R. Civ. P. 11.
Accordingly, leave to amend with respect to the unjust enrichment claim is denied as futile. See
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

as will be shown below, neither requires proof of any applicable duty of care. Therefore, the principle it cites has no application in this case.

        1.        Prima Facie Tort

"A cause of action in prima facie tort consists of four elements: '(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful.'" Discover Group, Inc. v. Lexmark Int'l, Inc., 333 F. Supp. 2d 78, 87 (E.D.N.Y. 2004) (quoting Silverman v. City of New York, No. 98-CV-6277, 2001 WL 218943, at *9 (E.D.N.Y. Feb. 2, 2001)). Moreover, "there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise unlawful act." Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (1983). This requirement is not met where the defendant was acting, at least in part, to further its own economic interests. See Discover Group, 333 F. Supp. 2d at 87.

In this case, Marketplace has alleged—in several places—that Harkey caused HEI to fail to make rent payments and failed to deliver a statement of gross sales in order "to harm or cause injury to Marketplace and/or to exert pressure for an extension of the Sublease. (¶ 85 (emphasis added); see also ¶¶ 59, 78-79, 89.) While Marketplace also makes the single conclusory allegation that Harkey "gained no economic advantage by causing the breach of the Sublease" (¶ 101), this statement is entirely contradicted by the rest of the Complaint.

At oral argument Marketplace argued that its "no economic advantage" allegation can be plead in the alternative with the allegations establishing an economic interest, and that this allows the Court to disregard the latter with respect to the prima facie tort claim. The Court disagrees. The Second Circuit has held that "[u]nder Rule 8(e)(2) of the Federal Rules of Civil

12

Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency."[9] Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994). "The inconsistency may lie either in the statement of the facts or in the legal theories adopted." Id. (internal quotations omitted). Accordingly, in the Rule 8(e)(2) context, courts may not construe allegations regarding one claim to be an admission against another. See id.

However, a plaintiff that has alleged facts demonstrating that its claim is legally precluded may not simply hide behind Rule 8(e)(2), because the Second Circuit has traditionally held that pleadings are binding judicial admissions. See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (citing Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)). Accordingly, a "'plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.'" Id. (quoting Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481 483 (7th Cir. 1997); Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 482 (S.D.N.Y. 2006) (quoting Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995) (Posner. J.)). In order to reconcile these two seemingly conflicting principles, courts have held that one must make reasonably clear that they are invoking Rule 8(e)(2)'s permissive standard. "While the [plaintiffs] need not use particular words to plead in the

---

[9]Rule 8(e)(2) provides:
A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

13

alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing." Holman v. State of Indiana, 211 F.3d 399, 407 (7th Cir. 2000); see also Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc., 976 F.2d 58, 62 (1st Cir. 1992) (noting that under Rule 8(e)(2), "a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading in the same case" but that this does not apply to allegations that were "not made in the context of an alternative or hypothetical pleading"); G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 536 (S.D.N.Y. 2002) (quoting Holman).

Here, Marketplace's allegations regarding Harkey's economic interest were not made in the context of alleging an alternative claim–rather, they seem to simply serve the atmospheric purpose of shedding light on Harkey's motive to take the action that it allegedly took. Because the factual allegations which preclude Marketplace's prima facie tort claim were not made in the context of supporting another, inconsistent claim, Marketplace cannot avail himself of the liberal inconsistent pleading standard of Rule 8(e)(2). The only reasonable inference that can be drawn from the complaint is that Harkey was economically interested in the commercial transaction at issue. Accordingly, Marketplace's claim for prima facie tort is dismissed.[10]

    2.  Tortious Interference with a Contract

"A claim of tortious interference [with a contract] requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." Foster v. Churchill, 87 N.Y.2d 744, 749-50 (1996). Additionally, economic interest on the part of the defendant

---

[10]As is stated above in note 8, Marketplace seeks leave to amend its complaint, but concedes that its proposed amendments only relate to its alter ego claim. Moreover, the Court doubts that Marketplace could now allege in good faith that Harkey has no economic interest in the matters at issue. Accordingly, leave to amend the prima facie tort claim is denied as futile.

provides an affirmative defense to a claim for tortious interference, unless the plaintiff comes forward with a showing of malice or illegality to overcome the defense.  See id. at 750; Felsen v. Sol Café Mfg. Corp., 24 N.Y.2d 682, 687 (1969).

Harkey makes no argument that Marketplace has failed to properly allege the four prima facie elements of this claim.  Rather, Harkey argues that the affirmative defense of economic interest is established on the face of the Complaint.  (Mot. at 16.)  The Second Circuit has held that courts may grant a pre-answer motion to dismiss on the basis of an affirmative defense where such defense appears on the face of the complaint.  See McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  As is discussed above with respect to the prima facie tort claim, here, Marketplace has clearly alleged that Harkey acted in its economic interest in an effort to extract an extension of the sublease such that it could continue to operate its Pretzel Time stores.  The only argument advanced by Marketplace in an effort to salvage its tortious interference claim is the same argument that it makes in the context of its claim for prima facie tort–that it did allege that Harkey gained no economic advantage by causing a breach of the sublease.  However, as is discussed above, because it cannot be reasonably inferred that Marketplace was pleading in the alternative pursuant to Rule 8(e)(2), this single conclusory allegation, which is contradicted by the entire complaint, is insufficient to salvage Marketplace's claim.  Accordingly, Harkey's motion to Dismiss is granted with respect to the claim for tortious interference with a contract.[11]

---

[11]The court notes that the affirmative defense of economic justification can be overcome by a plaintiff upon a showing of "malice or illegality."  See Foster, 87 N.Y.2d at 750; Felsen v. Sol Café Mfg. Corp., 24 N.Y.2d 682, 687 (1969).  However, Marketplace has failed to argue that it has made the requisite allegations of malice or illegality, instead relying solely on its argument that it pleaded Harkey's lack of an economic interest in the alternative.  Therefore, in the interest of justice, Marketplace is granted leave to amend its complaint to allege, if it can consistent with its obligations under Fed. R. Civ. P. 11, that Harkey acted with the requisite "malice or illegality" for the purposes of its tortious interference with a contract claim.

VI. **Conclusion**

For the reasons set forth above, Harkey's Motion to Dismiss the Complaint is granted with respect to the claims for unjust enrichment, prima facie tort, and tortious interference with a contract and denied with respect to the claim for alter ego liability. The unjust enrichment claim and prima facie tort claims are dismissed with prejudice, and the tortious interference with a contract claim is dismissed with leave to amend.

SO ORDERED.

Dated: Brooklyn, NY
March 31, 2008

Carol Bagley Amon
United States District Judge